UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHESTER DINWIDDIE,

    Petitioner,

v.

JEFFREY WOODS,

    Respondent.
_____/

Case No. 2:16-cv-13352
Hon. George Caram Steeh

**OPINION AND ORDER (1) GRANTING RESPONDENT'S MOTION
TO DISMISS [Dkt. 5], (2) DISMISSING PETITION FOR WRIT OF
HABEAS CORPUS, (3) GRANTING CERTIFICATE OF APPEALABILITY,
AND (4) GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS**

Chester Dinwiddie, ("Petitioner"), a Michigan Department of Corrections prisoner serving a life sentence, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition challenges Petitioner's 1987 Recorder's Court for the City of Detroit jury trial convictions of one count of first-degree murder, MICH. COMP. LAWS § 750.316, three counts of assault with intent to commit murder, MICH. COMP. LAWS § 750.83, and possession of a firearm during the commission of a felony. MICH. COMP. LAWS § 750227b. As a result of these convictions, Petitioner is serving a controlling sentence of life imprisonment without possibility of parole. The petition raises four claims: (1) Petitioner is entitled to a new trial in light of new reliable evidence proving that he is actually innocent, (2) Petitioner was denied the effective assistance of trial counsel, (3) Petitioner's jury was erroneously informed that two prosecution witnesses would be charged with perjury if they did not testify truthfully, and (4) the prosecutor committed misconduct by appealing to the religious beliefs of the jurors.

This matter is before the Court on Respondent's motion to dismiss the petition as untimely filed. Petitioner has filed a response to the motion asserting that the untimeliness of his petition should be excused because he can demonstrate that he is actually innocent. Petitioner supports his contention with an affidavit from another prisoner who claims that Petitioner was not with him when he committed the crime.

For the reasons stated below, the Court will grant Respondent's motion and dismiss the case because Petitioner failed to comply with the one-year limitations period under 28 U.S.C. §2244(d), and Petitioner has failed to demonstrate grounds for equitable tolling based on his claim of actual innocence. The Court will, however, grant a certificate of appealability and grant permission to proceed on appeal in forma pauperis.

**I. Background**

Petitioner and his co-defendant, Samuel Green, were charged with crimes related to an August 10, 1986, drive-by shooting occurring on a Detroit residential street which resulted in the death of an eight-year-old girl, Tanisha Baldwin. Three other children who were playing in the house with the deceased victim suffered non-fatal gunshot wounds.

The evidence presented at trial indicated that two drug gangs, one led by Charles Giles and the other by Gary Harris, were involved in a territorial dispute.[1] On the day of the shooting, Darryl Bell, who was in Giles's gang, fired a shot at a member of Harris's

---

[1] Petitioner's post-conviction counsel provided a narrative summary of the evidence introduced at trial, and the prosecutor's responsive pleading accepted the summary as accurate. See Dkt. 6-10, at Page ID 11-16; Dkt. 6-15, Page ID 36. The trial transcripts filed by Respondent are incomplete, so the background facts are derived, in part, from the statement of facts filed by Petitioner's state post-conviction counsel.

gang. Later that day, Giles called the apartment of Pamela Foster, and spoke to her boyfriend, Robert Thomas to ask him to gather a group of men to retaliate.

Pamela Foster testified that after the call Thomas went into the stairwell of her apartment building to gather gang members. Petitioner accompanied Thomas back into her apartment from the stairwell to retrieve weapons, and then Foster saw a brown van pull in the front of the building. Several of the men got into the van, but Foster could not identify which ones did so. The van then drove away.

Tonya Hall testified that the van arrived at Giles's location about half an hour after he called Thomas. Two men exited the van with weapons in their hands. They were dressed with hooded sweat suits, so Hall was unable to identify them. Hall testified that Darryl Bell got into the van to give directions to Harris's house. The van then drove away. As it turned out, Bell was mistaken about the location of Harris's house and directed the van to the house occupied by the four children.

Moments later a number of shots were fired at the house and struck the young victims, killing one and injuring three others. Bell testified under a grant of immunity that Petitioner was among the men in the van, and he was armed with a long gun. Bell also testified that Petitioner got out of the van and was one of the men who fired shots at the house. Bell testified that he fired a single shot at the house.

Foster testified that she saw the van return to her apartment building. Thomas and Petitioner were the only men who Foster identified as coming back into her apartment with guns. Foster testified that Thomas gave Petitioner clothes that he had on, including a hooded sweatshirt. Foster asked Thomas why he did this, and Thomas explained that Petitioner was going to "take the rap" for being caught with some

cocaine. Thomas instructed Foster to get together some clothes because they were leaving immediately for Atlanta.

The day after the shooting, police officers received an anonymous tip and arrested Bell. Bell made statements to the police under a grant of immunity. He led police officer's to Foster's apartment. Police searched the apartment on August 13th, where they found Petitioner and his co-defendant Green present with the weapons that were used in the shooting. A police officer testified that he questioned Petitioner on August 14th about the shooting. Petitioner said that he did not know anything about the incident other than what he heard on the news.

Based on this evidence, Petitioner was convicted of the offenses indicated above, and he was sentenced to a non-parolable life term as well as lesser terms.

Petitioner filed an appeal of right with the Michigan Court of Appeals. On September 7, 1989, the Michigan Court of Appeals issued an unpublished opinion affirming his convictions. *People v. Dinwiddie*, No. 105190 (Mich. Ct. App. Sept. 7, 1989). Petitioner filed an application for leave to appeal in the Michigan Supreme Court. The Michigan Supreme Court denied the application by standard order. *People v. Dinwiddie*, No. 87203 (Mich. Sup. Ct. May 31, 1991).

On August 26, 1991, Petitioner filed a motion for relief from judgment in the trial court, in which he first asserted his claim of innocence based on an affidavit executed by Robert Thomas. The affidavit indicates that Petitioner was not present in the van with Thomas when he committed the crime. See Dkt. 6-10, Appendix II. Thomas states that he pled guilty to second-degree murder in connection with the incident after Petitioner's trial. Id. The trial court denied the motion by order dated February 3, 1992.

Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals. The Michigan Court of Appeals denied the application "for lack of merit." *People v. Dinwiddie*, No. 149204 (Mich. Ct. App. July 14, 1992). Petitioner applied for leave to appeal to the Michigan Supreme Court. On April 13, 1993, the Michigan Supreme Court denied the application over two dissents that indicated the case should be remanded for a hearing on the credibility of the recanting affiant. *People v. Dinwiddie*, 502 N.W.2d 40 (Mich. 1993) (Table).

Over two decades later, on April 19, 2014, Petitioner filed a second motion for relief from judgment. The motion raised claims of ineffective assistance of trial counsel, and it was again supported by Thomas's affidavit. The trial court denied this motion on May 28, 2014. Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals. On December 4, 2014, the Michigan Court of Appeals denied the application pursuant to Michigan Court Rule 6.508(D). *People v. Dinwiddie*, No. 323807 (Mich. Ct. App. Dec. 4, 2014). Petitioner applied for leave to appeal to the Michigan Supreme Court. On December 22, 2015, the Michigan Supreme Court denied the application under the same court rule. *People v. Dinwiddie*, 872 N.W.2d 435 (Mich. 2015) (Table).

Petitioner signed and dated his present habeas petition on September 8, 2016.

## II. Discussion

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides a one-year period of limitation for a habeas petition filed by a state prisoner seeking habeas relief from a state court judgment. 28 U.S.C. § 2244(d)(1). The limitation runs from one of four specified dates, usually either the day when the judgment becomes final by the conclusion of direct review or the day when the time for seeking such review

expires. § 2244(d)(1)(A). The limitation period is tolled while "a properly filed application for State post-conviction or other collateral review . . . is pending." § 2244(d)(2).

Here, Petitioner's conviction and sentence became final sometime in 1991, after the Michigan Supreme Court denied relief on his direct appeal, and well before AEDPA's effective date, which was April 24, 1996. Prisoners whose convictions became final before AEDPA's effective date, such as Petitioner, were given a one-year grace period to file their federal habeas petitions. *Jurado v. Burt*, 337 F.3d 638, 640 (6th Cir. 2003). Petitioner was therefore required to file his federal habeas petition on or before April 24, 1997.

The record before the Court indicates that Petitioner filed two rounds of state post-conviction review, one prior to AEDPA's effective date, and the other in 2014, about seventeen years after the one-year grace period expired. A state court post-conviction motion that is filed after the expiration of the limitations period cannot toll the period because there is no period remaining to be tolled. *Hargrove v. Brigano*, 300 F.3d 717, 718 n.1 (6th Cir. 2002); *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000); see also *Jurado*, 337 F.3d at 641. AEDPA's limitations period does not begin to run anew after the completion of state post-conviction proceedings. *Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001). Accordingly, nothing Petitioner filed in the state courts acted to toll the limitations period under § 2244(d)(2). Petitioner submitted his federal habeas petition on September 8, 2016, almost two decades after the one-year grace period expired.

The petition is therefore time-barred unless Petition demonstrates grounds for equitable tolling. *Holland v. Florida*, 560 U.S. 631, 649 (2010). A petitioner is entitled to equitable tolling if he shows "(1) that he has been pursuing his rights diligently, and (2)

that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* (internal quotation marks omitted). The party seeking equitable tolling bears the burden of proving that he is entitled to it. *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010).

Petitioner asserts that he is entitled to equitable tolling because he is actually innocent. The one year statute of limitations may be equitably tolled based upon a credible showing of actual innocence under the standard enunciated in *Schlup v. Delo*, 513 U.S. 298 (1995). See *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928, 185 L. Ed. 2d 1019 (2013). The Supreme Court cautioned, however, that "tenable actual-innocence gateway pleas are rare[.]" *Id*. To succeed on such a claim, a habeas applicant must show that "in light of new evidence, 'it is more likely than not that no reasonable juror would have found [the petitioner] guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 537 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Petitioner's claim of actual innocence is founded on Thomas's affidavit. Thomas pled guilty to second-degree murder in connection with the shootings on November 15, 1988, after Petitioner's trial ended, but while Petitioner's direct appeal was still pending in the state appellate courts. Dkt. 6-10, at Page ID 23-45. Thomas executed his affidavit in prison on February 13, 1991. Id., at 50.[2] Thomas states that Petitioner was not present in the car when the shooting occurred. He explains that he paid Petitioner to stay at his apartment when he went out to commit the crime, and he paid him again after the shooting to stay at the apartment while he fled to Atlanta. Id., at 49-50. Thomas

---

[2]An earlier version of Thomas's affidavit was executed on August 9, 1990, and appears in Petitioner's second motion for relief from judgment. See Dkt. 6-13, Page ID, 25-26. This affidavit also asserts that Petitioner's co-defendant Green also stayed behind at the apartment at the time of the shooting. Id., at 26.

explains (in his second affidavit only) that he did not come forward at the time of Petitioner's trial because the charges against him had not yet been resolved. Id. Thomas's first affidavit dubiously claims that if he had been asked by Petitioner's attorneys to do so, he would have testified in their defense at trial. Dkt. 6-13, at Page ID 26.

A Court "may consider how the timing of the submission [of new evidence of innocence] and the likely credibility of a petitioner's affiants bear on the probable reliability of . . . the evidence of actual innocence." *Schlup*, 513 U.S. at 332. Here, Petitioner first submitted Thomas's affidavit to the state courts in 1992, during his first round of state post-conviction review. Accordingly, he presented the affidavit on state post-conviction review within months of obtaining it. When that proceeding ended, however, Petitioner waited until 2014 to renew his request for relief. He offers no good explanation for this over two-decade delay for his failure to raise his claim of actual innocence in federal court. Statements from witnesses made years after the crime are inherently suspect, see *Schlup*, 513 U.S. at 331, and such statements are viewed with "a fair degree of skepticism." *Herrera,* 506 U.S. at 423 (O'Connor, J., concurring).

Petitioner seeks an evidentiary hearing to support his claim of actual innocence, and whether to hold one falls with the discretion of the Court. *Sawyer v. Hofbauer*, 299 F.3d 605, 610 (6th Cir. 2002). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *Turner v. Romanowski*, 409 Fed. App'x 922 (6th Cir. 2011) (affirming denial of affidavit-based actual innocence claim without evidentiary hearing).

Here, even if Petitioner were able to have Thomas testify in accordance with his affidavit, Petitioner cannot demonstrate that it is more likely than not that *no* reasonable juror would have found him guilty beyond a reasonable doubt. A reasonable juror hearing all the trial evidence as well as Thomas's version of events could easily choose to believe the trial testimony of Bell, Hall, and Foster indicating Petitioner's participation in the shooting despite Thomas's testimony that Petitioner was not in the van. At the time Thomas executed his affidavit he was in the Michigan Department of Corrections with Petitioner. The two men were in the same drug gang, it is not difficult to see how Thomas's credibility could be effectively challenged on this basis. Petitioner's case therefore falls outside of the actual innocence tolling exception because he has presented no new, reliable evidence to establish that he was actually innocent of the crime charged. See *Ross v. Berghuis*, 417 F. 3d 552, 556 (6th Cir. 2005).

Accordingly, the petition was untimely filed and will be dismissed under § 2244(d).

### III. Certificate of Appealability

Before Petitioner may appeal, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). When a court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial

of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id*.

Having undertaken the requisite review, the court concludes that jurists of reason could debate the Court's procedural ruling. The Court notes that two Michigan Supreme Court Justices dissented from the order denying Petitioner's first application for state post-conviction relief, stating they would remand the case for a hearing to determine Thomas's credibility. Furthermore, the Court was not furnished with a complete copy of the trial record. Although it was able to review the critical prosecution testimony given by Bell (Dkt. 6-7) and Hall (Dkt. 6-8), it was forced to rely on a summary of Foster's testimony, which also formed a crucial part of the prosecutor's case. A certificate of appealability will therefore be granted on whether the petition was properly dismissed for failure to comply with the statute of limitations. Leave to appeal in forma pauperis is granted because an appeal of this order could be taken in good faith. 18 U.S.C. § 1915(a)(3).

### IV. Order

For the foregoing reasons, **IT IS ORDERED** that Respondent's motion to dismiss [dkt. 5] is **GRANTED**, and the petition is **DISMISSED.**

**IT IS FURTHER ORDERED** that a certificate of appealability and permission for leave to appeal in forma pauperis are **GRANTED.**

Dated: April 28, 2017

                                                s/George Caram Steeh
                                                GEORGE CARAM STEEH
                                                UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on April 28, 2017, by electronic and/or ordinary mail and also on Chester Dinwiddie #188608, Chippewa Correctional Facility, 4269 W. M-80, Kincheloe, MI 49784.

s/Barbara Radke
Deputy Clerk